# JAMES *v.* KENTUCKY

No. 82–6840.   Argued February 28, 1984—Decided April 18, 1984

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, BLACKMUN, POWELL, STEVENS, and O'CONNOR, JJ., joined. REHNQUIST, J., filed a dissenting statement, *post*, p. 352. MARSHALL, J., took no part in the decision of the case.

*C. Thomas Hectus* argued the cause and filed a brief for petitioner.

*Penny R. Warren*, Assistant Attorney General of Kentucky, argued the cause for respondent. With her on the brief were *David L. Armstrong*, Attorney General, and *Robert L. Chenoweth*, Assistant Deputy Attorney General.

JUSTICE WHITE delivered the opinion of the Court.

In *Carter* v. *Kentucky*, 450 U. S. 288 (1981), we held that a trial judge must, if requested to do so, instruct the jury not to draw an adverse inference from the defendant's failure to take the stand. In this case, the Kentucky Supreme Court found that the trial judge was relieved of that obligation because defense counsel requested an "admonition" rather than an "instruction."

## I

Petitioner Michael James was indicted for receipt of stolen property, burglary, and rape.[1] James had been convicted of

---

[1] The charges grew out of three separate incidents, all involving Donna Richardson. Richardson testified that on April 23, 1980, her house was broken into and a gun taken from under her pillows. A week later, she

two prior felonies—forgery and murder—and the prosecution warned that were James to take the stand it would use the forgery conviction to impeach his testimony. During *voir dire*, defense counsel asked the prospective jurors how they would feel were James not to testify. After a brief exchange between counsel and one member of the venire, the trial judge interrupted, stating: "They have just said they would try the case solely upon the law and the evidence. That excludes any other consideration." App. 30.[2] With that, *voir dire* came to a close. James did not testify at trial.

At the close of testimony, counsel and the judge had an off-the-record discussion about instructions. When they returned on the record, James' lawyer noted that he objected to several of the instructions being given, and that he "requests that an admonition be given to the jury that no emphasis be given to the defendant's failure to testify which was overruled." *Id.*, at 95.[3] The judge then instructed the jury,

---

came home to find that a pane of glass had been removed from her back door, the locks undone, and her pillows messed up. On May 6, James, her next-door neighbor, asked to use her telephone to call a doctor. When Richardson let him in and began dialing, he put a gun to her side, tied her up, brought her to his house, and raped her.

James had the stolen pistol in his possession when arrested, hence the charge of receiving stolen property. His fingerprint was found on the missing pane of glass, hence the charge of burglary.

[2] We rejected similar logic with regard to the instructions themselves in *Carter* v. *Kentucky*, 450 U. S. 288 (1981):

"Kentucky also argues that in the circumstances of this case the jurors knew they could not make adverse inferences from the petitioner's election to remain silent because they were instructed to determine guilt 'from the evidence alone,' and because failure to testify is not evidence. The Commonwealth's argument is unpersuasive. Jurors are not lawyers; they do not know the technical meaning of 'evidence.' They can be expected to notice a defendant's failure to testify, and, without limiting instruction, to speculate about incriminating inferences from a defendant's silence." *Id.*, at 303–304.

[3] The relevant portion of the transcript reads, in its entirety, as follows: "JUDGE MEIGS: Call your witness. You have closed, I am sorry.

which returned a verdict of guilty on all counts. At a subsequent persistent felony offender proceeding, the jury sentenced James to life imprisonment in light of his two previous convictions.

On appeal, James argued that the trial judge's refusal to tell the jury not to draw an adverse inference from his failure to testify violated *Carter* v. *Kentucky, supra.* The Kentucky Supreme Court conceded that *Carter* requires the trial judge, upon request, to instruct the jury not to draw an adverse inference. 647 S. W. 2d 794, 795 (1983). The court noted, however, that James had requested an admonition rather than an instruction, and there is a "vast difference" between the two under state law. He "was entitled to the instruction, but did not ask for it. The trial court properly denied the request for an admonition." *Id.*, at 795–796. We granted certiorari, 464 U. S. 913 (1983), to determine whether petitioner's asserted procedural default adequately supports the result below. We now reverse.

## II

In *Carter* we held that, in order fully to effectuate the right to remain silent, a trial judge must instruct the jury not to draw an adverse inference from the defendant's failure to testify if requested to do so. James argues that the essence of the holding in *Carter* is that the judge must afford some form of guidance to the jury, and that the admonition he

---

"MR. PEALE [defense counsel]: We have closed and has *[sic]* a matter in regards to the instructions.

"OFF THE RECORD.

"MR. PEALE: Note that the defendant objects to several of the instructions being given to the jury.

"JUDGE MEIGS: Overruled.

"MR. PEALE: The defendant requests that an admonition be given to the jury that no emphasis be given to the defendant's failure to testify which was overruled.

"JUDGE MEIGS: Ladies and gentlemen of the jury, these are your instructions. . . ." Tr. of Hearing (Jan. 19, 1982), pp. 3–4.

sought was the "functional equivalent" of the instruction required by *Carter*. The State responds that the trial judge was under no obligation to provide an admonition when under Kentucky practice James should have sought an instruction. An examination of the state-law background is necessary to understand these arguments.

## A

Kentucky distinguishes between "instructions" and "admonitions." The former tend to be statements of black-letter law, the latter cautionary statements regarding the jury's conduct. See generally *Webster* v. *Commonwealth*, 508 S. W. 2d 33, 36 (Ky. App.), cert. denied, 419 U. S. 1070 (1974); *Miller* v. *Noell*, 193 Ky. 659, 237 S. W. 373 (App. 1922). Thus, "admonitions" include statements to the jury requiring it to disregard certain testimony, *Perry* v. *Commonwealth*, 652 S. W. 2d 655, 662 (Ky. 1983); *Stallings* v. *Commonwealth*, 556 S. W. 2d 4, 5 (Ky. 1977), to consider particular evidence for purposes of evaluating credibility only, *Harris* v. *Commonwealth*, 556 S. W. 2d 669, 670 (Ky. 1977); *Lynch* v. *Commonwealth*, 472 S. W. 2d 263, 266 (Ky. App. 1971), and to consider evidence as to one codefendant only, *Ware* v. *Commonwealth*, 537 S. W. 2d 174, 177 (Ky. 1976). The State Rules of Criminal Procedure provide that at each adjournment the jury is to be "admonished" not to discuss the case. Ky. Rule Crim. Proc. 9.70 ("Admonition"). See generally 1 J. Palmore & R. Lawson, Instructions to Juries in Kentucky 16–20, 397–404 (1975) (hereinafter Palmore).

Instructions, on the other hand, set forth the legal rules governing the outcome of a case. They "state what the jury must believe from the evidence . . . in order to return a verdict in favor of the party who bears the burden of proof." *Webster* v. *Commonwealth, supra,* at 36. The judge reads the instructions to the jury at the end of the trial, and provides it a written copy. Ky. Rule Crim. Proc. 9.54(1). After *Carter*, Kentucky amended its Criminal Rules to

provide that, if the defendant so requests, the instructions must state that he is not compelled to testify and that the jury shall not draw an adverse inference from his election not to. Rule 9.54(3).[4]

The substantive distinction between admonitions and instructions is not always clear or closely hewn to. Kentucky's highest court has recognized that the content of admonitions and instructions can overlap. In a number of cases, for example, it has referred to a trial court's failure either to instruct *or* to admonish the jury on a particular point, indicating that either was a possibility. *E. g., Caldwell* v. *Commonwealth*, 503 S. W. 2d 485, 493–494 (1972) ("instructions" did not contain a particular "admonition," but the "failure to admonish or instruct" was harmless); *Reeves* v. *Commonwealth*, 462 S. W. 2d 926, 930, cert. denied, 404 U. S. 836 (1971). See also *Bennett* v. *Horton*, 592 S. W. 2d 460, 464 (1979) ("instructions" included the "admonition" that the jury could make a certain setoff against the award); *Carson* v. *Commonwealth*, 382 S. W. 2d 85, 95 (1964) ("The fourth instruction was the usual reasonable doubt admonition"). The court has acknowledged that "sometimes matters more appropriately the subject of admonition are included with or as a part of the instructions." *Webster* v. *Commonwealth, supra,* at 36.

In pre-*Carter* cases holding that a defendant had no right to have the jury told not to draw an adverse inference, Kentucky's highest court did not distinguish admonitions from instructions. See, *e. g., Luttrell* v. *Commonwealth*, 554 S. W. 2d 75, 79–80 (1977) ("instruction"); *Scott* v. *Commonwealth*, 495 S. W. 2d 800, 802 ("written admonition," "admonition"),

---

[4] That Rule provides:

"The instructions shall not make any reference to a defendant's failure to testify unless so requested by him, in which event the court shall give an instruction to the effect that he is not compelled to testify and that the jury shall not draw any inference of guilt from his election not to testify and shall not allow it to prejudice him in any way."

cert. denied, 414 U. S. 1073 (1973); *Green v. Commonwealth*, 488 S. W. 2d 339, 341 (1972) ("instruction"); *Dixon v. Commonwealth*, 478 S. W. 2d 719 (1972) ("an instruction admonishing the jury"); *Jones v. Commonwealth*, 457 S. W. 2d 627, 630 (1970) ("admonition" during another witness' testimony), cert. denied, 401 U. S. 946 (1971); *Roberson v. Commonwealth*, 274 Ky. 49, 50, 118 S. W. 2d 157, 157–158 (1938) ("admonition"), citing *Hanks v. Commonwealth*, 248 Ky. 203, 205, 58 S. W. 2d 394, 395 (App. 1933) ("instruction"). A statement to the jury not to draw an adverse inference from the defendant's failure to testify would seem to fall more neatly into the admonition category than the instruction category. Cautioning the jury against considering testimony *not* given differs little from cautioning it not to consider testimony that was.[5] However, the Kentucky Criminal Rules treat it as an instruction. See n. 4, *supra*.

One procedural difference between admonitions and instructions is that the former are normally oral, while the latter, though given orally, are also provided to the jury in writing. See generally 1 Palmore, ch. 12. However, this distinction is not strictly adhered to. As the cases cited above indicate, "admonitions" frequently appear in the written instructions. See also *id.*, at 21 ("An 'admonition' . . . need not be in writing. However, it is not error to give such admonition in writing as an instruction"); *id.*, at 17. Conversely, instructions may be given only orally if the defendant waives the writing requirement. Brief for Respondent

---

[5] Indeed, such a statement is substantively indistinguishable from an "admonition" given in this very case. When James was brought into court for the persistent-felony-offender hearing, he was in handcuffs. After requesting and being denied a mistrial, his attorney asked: "Can we at least have an admonition to the jury, your Honor?" The judge obliged, telling the jury it was "admonished not to consider the fact that the defendant was brought into the courtroom shackled and handcuffed. That should have nothing to do, no bearing at all, on your decision in this case." 5 Tr. 4.

25; Tr. of Oral Arg. 31, 38–39. The State contends, though without citing any authority, that the instructions must be all in writing or all oral, and that it would have been reversible error for the trial judge to have given this "instruction" orally. Yet the Kentucky Court of Appeals has held, for example, that there was no error where the trial court, after reading the written instructions, told the jury orally that its verdict must be unanimous, a statement normally considered an "instruction." *Freeman* v. *Commonwealth*, 425 S. W. 2d 575, 579 (1968). And in several cases the Court of Appeals has found no error where the trial court gave oral explanations of its written instructions. *E. g.*, *Allee* v. *Commonwealth*, 454 S. W. 2d 336, 342 (1970), cert. dism'd *sub nom. Green* v. *Kentucky*, 401 U. S. 950 (1971); *Ingram* v. *Commonwealth*, 427 S. W. 2d 815, 817 (1968). Finally, given Kentucky's strict contemporaneous-objection rule, see, *e. g.*, *Webster* v. *Commonwealth*, 508 S. W. 2d, at 36; *Reeves* v. *Commonwealth*, *supra*, at 930; Ky. Rule Crim. Proc. 9.54(2), it would be odd if it were reversible error for the trial court to have given a *Carter* instruction orally at the defendant's request. See also *Weichhand* v. *Garlinger*, 447 S. W. 2d 606, 610 (Ky. App. 1969) (harmless error to give oral admonition where written instruction was requested and appropriate).

B

There can be no dispute that, for federal constitutional purposes, James adequately invoked his substantive right to jury guidance. See *Douglas* v. *Alabama*, 380 U. S. 415, 422 (1965). The question is whether counsel's passing reference to an "admonition" is a fatal procedural default under Kentucky law adequate to support the result below and to prevent us from considering petitioner's constitutional claim. In light of the state-law background described above, we hold that it is not. Kentucky's distinction between admonitions and instructions is not the sort of firmly established and regularly followed state practice that can prevent implementation

of federal constitutional rights. Cf. *Barr* v. *City of Columbia*, 378 U. S. 146, 149 (1964). *Carter* holds that if asked to do so the trial court must tell the jury not to draw the impermissible inference. To insist on a particular label for this statement would "force resort to an arid ritual of meaningless form," *Staub* v. *City of Baxley*, 355 U. S. 313, 320 (1958), and would further no perceivable state interest, *Henry* v. *Mississippi*, 379 U. S. 443, 448–449 (1965). See also *NAACP* v. *Alabama ex rel. Flowers*, 377 U. S. 288, 293–302 (1964). "Admonition" is a term that both we [6] and the State Supreme Court have used in this context and which is reasonable under state law and normal usage. As Justice Holmes wrote 60 years ago: "Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *Davis* v. *Wechsler*, 263 U. S. 22, 24 (1923).

## C

The State argues that this is more than a case of failure to use the required magic word, however. It considers James' request for an admonition to have been a deliberate strategy. He sought an oral statement only in order to put "less emphasis on this particular subject, not before the jury, not in writing to be read over and over, but to have been commented upon and passed by." Tr. of Oral Arg. 39–40. James, now represented by his third attorney, seems to concede that the first attorney did seek an oral admonition. He does not argue that the trial court had to include the requested statement in the instructions,[7] though he suggests that it could

---

[6] See *Bruno* v. *United States*, 308 U. S. 287, 294 (1939) (Court unwilling to assume "that jurors, if properly admonished, neither could nor would heed the instructions of the trial court" not to draw an improper inference).

[7] When asked at oral argument whether his "basic argument [is] that your client was entitled to an instruction because he had requested something almost like an instruction or that he was entitled to an admonition

have done so, and that he would have been happy with either a written or an oral statement. Brief for Petitioner 23–25.

We would readily agree that the State is free to require that all instructions be in writing;[8] and to categorize a no-adverse-inference statement as an instruction. The Constitution obliges the trial judge to tell the jury, in an effective manner, not to draw the inference if the defendant so requests; but it does not afford the defendant the right to dictate, inconsistent with state practice, *how* the jury is to be told. Cf. *Taylor* v. *Kentucky*, 436 U. S. 478, 485–486 (1978). In *Lakeside* v. *Oregon*, 435 U. S. 333 (1978), we held that the judge may give a no-adverse-inference instruction over the defendant's objection. Given that, the State may surely give a written instruction over the defendant's request that it be oral only. And if that is so, the State can require that if the instruction is to be given, it be done in writing. For reasons similar to those set out in *Lakeside*, we do not think that a State would impermissibly infringe the defendant's right not to testify by requiring that if the jury is to be alerted to it, it be alerted in writing. See generally *Cupp* v. *Naughten*, 414 U. S. 141, 146 (1973).

This is not a case, however, of a defendant attempting to circumvent such a firm state procedural rule. For one thing, as the discussion in Part II–A, *supra*, indicates, the oral/written distinction is not as solid as the State would have us believe. Admonitions can be written and instructions oral, and the Kentucky Supreme Court has itself used the term "admonition" in referring to instructions that "admonish." In addition, our own examination of the admittedly incomplete record[9] reveals little to support the State's

---

because he had requested an admonition," petitioner's counsel answered that his "basic argument is that he was entitled to an admonition, at the very least." Tr. of Oral Arg. 25.

[8] Whether Kentucky has in fact done so is not clear. See *supra*, at 348.

[9] Neither of the trial lawyers was involved in the appeal. Thus, appellate counsel and the appellate court were working from the same unelaborated record that is before us.

view of petitioner's request. The single passing reference to an "admonition" is far too slender a reed on which to rest the conclusion that petitioner insisted on an oral statement and nothing but.

Apart from this one use of the term, there is absolutely nothing in the record to indicate any such insistence. Indeed, other indications are to the contrary. Before going off the record, defense counsel stated that he had "a matter in regards to the *instructions*." Tr. of Hearing (Jan. 19, 1982), p. 3 (emphasis added). Returning to the record, he noted that he "object[ed] to several of the instructions being given to the jury" and that his request for "an admonition" to the jury regarding the defendant's failure to testify had been overruled. The court below inferred from these two statements that counsel had sought an oral statement apart from the instructions. Yet the statements could also be a shift from an objection to what was being said to the jury ("the instructions being given"), to an objection to what was not ("requests an admonition . . . which was overruled"). It is also possible that counsel sought both a written and an oral statement and was denied on both counts.

Where it is inescapable that the defendant sought to invoke the substance of his federal right, the asserted state-law defect in form must be more evident than it is here. In the circumstances of this case, we cannot find that petitioner's constitutional rights were respected or that the result below rests on independent and adequate state grounds.

## III

Respondent argues that even if there was error, it was harmless. It made the same argument below, but the Kentucky Supreme Court did not reach it in light of its conclusion that no error had been committed. We have not determined whether *Carter* error can be harmless, see *Carter*, 450 U. S., at 304, and we do not do so now. Even if an evaluation of harmlessness is called for, it is best made in state court

before it is made here. The case is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

JUSTICE MARSHALL took no part in the decision of this case.

JUSTICE REHNQUIST dissents for the reasons stated in his dissenting opinion in *Carter* v. *Kentucky,* 450 U. S. 288, 307–310 (1981).